**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN L. BLAKELY**
Acton & Snyder, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES D. MOORE**
**ANDREW P. FETERICK**
Ryan, Moore & Cook
Frankfort, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MIR IQBAL, ET AL, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1210-MF-860 |
| | ) | |
| S-MART PETROLEUM, INC., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1001-MF-3

**August 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Mir Iqbal ("Iqbal"), M&U, LLC ("M&U"), a limited liability company, and SGTC II, an Indiana Corporation (collectively, "the defendants") appeal the trial court's order in favor of S-Mart Petroleum, Inc. ("S-Mart").

We affirm.

## ISSUES

The following issues are dispositive:

1. Whether the trial court erred in determining that M&U is obligated to pay real estate taxes on mortgaged property that it owned at the time the taxes accrued.

2. Whether the trial court had equitable authority to order M&U to reimburse S-Mart after it paid the real estate taxes on M&U's mortgaged property.

## FACTS AND PROCEDURAL HISTORY

S-Mart is an Indiana corporation engaged in the sale of motor fuels. Iqbal is an Illinois resident doing business in Indiana and is the sole member and manager of M&U and the president and majority shareholder of SGTC II.

On or about March 7, 2007, S-M-1 Acquisition Corporation ("S-M-1") and S-Mart entered into a motor fuel sales agreement, and Iqbal signed a personal guaranty. S-M-1 failed to pay for motor fuel delivered by S-Mart pursuant to the agreement, and, on October 23, 2008, S-Mart filed suit against S-M-1, Ali Ahmed, and Iqbal to recover the payment. On April 14, 2009, the trial court entered summary judgment in favor of S-Mart.

2

On October 1, 2009, Iqbal, together with M&U and SGTC II (entities created by Iqbal) entered into a settlement agreement pertaining to the judgment entered in the 2008 litigation. As part of the agreement, Iqbal, individually and as the sole member of M&U and as the president of SGTC II, executed a promissory note and agreement to purchase motor fuel. Also as part of the agreement, M&U secured the obligations under the promissory note and motor fuel agreement by granting a mortgage and security agreement in real estate owned by M&U.

On January 27, 2010, after Iqbal, M&U and SGTC II breached the settlement agreement, S-Mart filed a complaint seeking to enforce the settlement agreement, foreclose the mortgage, and collect damages for breach of the motor fuel agreement. On March 22, 2010, S-Mart filed a motion for summary judgment, which the trial granted on June 28, 2010. Among other things, the trial ordered that the mortgaged property owned by M&U be sold in a sheriff's sale and that the proceeds be paid to S-Mart. Neither S-Mart's motion for summary judgment nor the trial court's order specifically mentioned real estate taxes on the property, presumably because prior to July 1, 2010, pursuant to Indiana Code § 32-30-10-14, real estate taxes were collected by the sheriff and paid as a prioritized expense of sale. However, on July 1, 2010, the Indiana Code was amended by Indiana Code § 32-29-7-8.5(a). The new statute required the party that files a praecipe for a sheriff's sale to pay all delinquent taxes prior to the sale.

On July 19, 2010, S-Mart filed its first praecipe for sheriff's sale, and a sheriff's sale was scheduled for October 7, 2010. As required by Indiana Code § 32-29-7-8.5, S-

3

Mart paid delinquent real estate taxes which were assessed while M&U owned the real estate. The payment of the taxes by S-Mart was both necessary to avoid the property being sold at a tax sale and to preserve S-Mart's interest in the property.

On September 23, 2010, S-Mart filed its "Motion to Amend Judgment to Add Post Judgment Payment of Real Estate Taxes Secured by Mortgage." (App. 3). None of the defendants responded to the motion, and on September 28, 2010, the trial court entered an "Order Amending Judgment to Add Post Judgment Payment of Real Estate Taxes Secured by Mortgage." *Id.*

On October 6, 2010, M&U filed a Chapter 11 bankruptcy. Thus, the scheduled sheriff's sale of the mortgaged property was stayed. However, on December 1, 2011, the bankruptcy court issued an order granting relief from the stay and authorizing the sale of the mortgaged property at a second sheriff's sale.

On December 13, 2011, S-Mart filed a second praecipe for sheriff's sale. On February 27, 2012, S-Mart was once again required by Indiana Code § 32-20-7-8.5 to pay delinquent taxes (owed on November 2010, May 2011, and November 2011) in order to preserve its rights. A sheriff's sale was scheduled for and completed on March 7, 2012.

On March 1, 2012, S-Mart filed a "Second Motion to Add Post-Judgment Payment of Real Estate Taxes Secured by Mortgage." (App. 58). This time, M&U and SGTC II objected and a hearing was held on their objection. The trial court subsequently granted S-Mart's motion and entered judgment on October 1, 2012.

The defendants now appeal.

4

DISCUSSION AND DECISION

1.      Obligation to Pay Real Estate Taxes

M&U contends that it is not liable for the payment of real estate taxes on the mortgaged property under Indiana Code § 32-29-7-8.5(a), which states that before the date of a sheriff's sale of property the party that filed the praecipe for the sheriff's sale shall pay "all delinquent property taxes, special assessments, penalties, and interest that are due and owing on the property on the date of the sheriff's sale."

M&U's contention is fundamentally flawed.  In order for the property taxes to be delinquent, M&U, as owner of the mortgaged property, must have already failed to meet its statutory obligation to pay real estate taxes assessed on the property.  Otherwise, the taxes would not be delinquent, and S-Mart would not have had to pay the taxes to preserve its interest in the property.  Indiana Code § 6-1.1-2-4(a) states that "the owner of any real property on the assessment date of a year is liable for the taxes imposed for that year on the property . . . ."

Thus, M&U had a statutory obligation to pay the real property taxes assessed on the mortgage property that it owned.  M&U additionally had a contractual duty under the mortgage agreement to pay the taxes.  Nothing in Indiana Code § 32-29-7-8.5(a) prevents a party from recovering taxes that it paid in the name of another.  In short, the trial court did not err in determining that M&U was responsible for payment of the taxes.

2.      Equitable Authority of the Trial Court

5

The defendants contend that S-Mart's motion to amend the judgment was untimely and that the trial court lacked authority to rule on the motion. The defendants argue that the trial court's summary judgment order was a final judgment that could not be amended more than thirty days after entry unless a party filed a timely motion to correct error. (Br. 10) (citing Indiana Trial Rules 52(B) and (59(C)). M&U and SGTC II conclude that the trial court could not amend the judgment because S-Mart's motion for a second motion to amend the judgment was filed outside the thirty-day deadline.

In *Songer v. Civitas Bank*, 771 N.E.2d 61, 69 (Ind. 2002), our Supreme Court held that foreclosure actions are essentially equitable. We subsequently held in *Farm Credit Services of Mid-America, FLCA v. Tucker*, 792 N.E.2d 565, 569 (Ind. Ct. App. 2003) that when a court acts in equity in a foreclosure action, it is not bound "'by strict rules of law'" and "'looks beneath the rigid rules,' exercising its 'power to prevent strict legal rules from working injustice.'" *Id.* (quoting *Wabash Valley Coach Co. v. Turner*, 221 Ind. 52, 46 N.E.2d 212, 217 (1943), *cert. denied*). We further held that "a court of equity has the power to require that to be done which should have been done." *Id.*

Here, the defendants do not claim that M&U paid the taxes on the mortgaged property that it owned. Indeed, when S-Mart filed its first motion to amend the judgment to recoup its payment of M&U's taxes, the defendants did not contest the motion. It was not until S-Mart was forced to file a second motion that M&U and SGTC II objected to the amendment to the judgment. When the trial court granted the two motions to amend the judgment, it accounted for a post-judgment statutory change that required S-Mart to

6

protect its rights by paying taxes that M&U neglected to pay. In granting the motions, the trial court accounted for damages that could not have been anticipated at the time S-Mart filed its summary judgment motion and the trial court entered its initial judgment thereon.[1] Under *Tucker*, we conclude that the trial court was not prevented by legal rules from requiring as a matter of equity "that to be done which should have been done."

Affirmed.

VAIDIK, J., concur.

KIRSCH, J., dissent.

---

[1] The defendants make much of S-Mart's "failure" to plead the unpaid taxes as "special damages" in its summary judgment motion. (Br. 10). The defendants' contention does not account for the post-judgment change in the law.